**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| **INNOVATION SCIENCES, LLC,**<br>**7500 LEGACY CIRCLE**<br>**PLANO, TEXAS 75024**<br>**Plaintiff**<br>**v.**<br><br>**SONY CORPORATION**<br>**SONY CITY OSAKI BUILDING**<br>**1-7-1 KONAN, MINATO-KU**<br>**SHINAGAWA CITY, TOKYO, JAPAN**<br>**and**<br>**SONY SEMICONDUCTOR SOLUTIONS CORP**<br>**4-14-1 ASAHI-CHOATSUGI-SHI,**<br>**KANAGAWA, 243-0014 JAPAN**<br>**Defendant** | **Civil Action No.**<br><br>**4:26-cv-783** |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Innovation Sciences, LLC ("Innovation Sciences" or "Plaintiff"), for its Complaint against Sony Corporation (Sony) and Sony Semiconductor Solutions Corporation Sony Semi), alleges as follows:

**NATURE OF THE ACTION**

1. This is an action for patent infringement arising under the Patent Laws of the United States, 35 U.S.C. §§ 1 et seq.

2. This action involves Defendants' unauthorized making, using, selling, offering for sale, importing, marketing, supporting, distributing, and operating of products and services that infringe one or more claims of United States Patent Nos. 10,368,125 ("the '125 Patent"),

10,469,898 ("the '898 Patent"), 11,109,094 ("the '094 Patent"), and 12,634,129 ("the '129 Patent") (collectively, the "Patents-in-Suit").

3. Innovation Sciences seeks damages, injunctive relief, and all other remedies available under 35 U.S.C. §§ 271, 281, 283, 284, and 285, including enhanced damages for willful infringement. Innovation Sciences seeks recovery of damages for all acts of infringement occurring during the applicable statutory damages period, including pre-suit damages to the fullest extent permitted by law.

**PARTIES**

4. Plaintiff Innovation Sciences, LLC is a Texas limited liability company with its principal place of business and registered office located at 7500 Legacy Cir, Plano, Texas 75024. Plaintiff is organized under the laws of the State of Texas.

5. Defendant Sony Corporation is a Japanese corporation with its principal place of business at 1-7-1 Konan, Minato-ku, Tokyo 108-0075, Japan.

6. Defendant Sony Semiconductor Solutions Corporation is a Japanese corporation with its principal place of business at 4-14-1 Asahi-cho, Atsugi-shi, Kanagawa 243-0014, Japan.

7. Upon information and belief, Sony develops, manufactures, sells and supplies the Accused Sony Cell Phones.

8. Upon information and belief, Sony Semi develops, manufactures, sells and supplies the IMX500 intelligent vision sensor and AITRIOS architecture that form the technological foundation of the accused Edge AI systems.

9. Upon information and belief, each Defendant participates in and benefits from the design, manufacture, commercialization, importation, distribution, marketing, and sale of the

Accused Products. Defendants purposefully direct the manufacture, importation, marketing, and sale of the Accused Products into the United States and derive substantial revenue therefrom. Defendants make, use, offer for sale, sell, import, support, maintain, market, distribute, and operate the Accused Products.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

10. This Court has personal jurisdiction over Defendants as foreign corporations because, upon information and belief, Defendants have purposefully directed business activities toward the State of Texas and the United States and have committed acts of infringement giving rise to this action.

11. Defendants derive substantial revenue from products sold throughout the United States, including in this District.

12. Upon information and belief, Defendants have marketed, imported, sold, offered for sale, distributed, and supported the Accused Products throughout the United States, including in this District. Sony and Sony Semi, directly and through authorized distributors, resellers, retailers, integrators, and commercial partners, imports, offers for sale, sells, markets, distributes, and supports the Accused Products throughout the United States, including within the Eastern District of Texas. Such partners include Arrow Electronics, DigiKey, Mouser Electronics, Amazon, Best Buy, and other retail and commercial channels with physical locations and operations serving customers in this District. Upon information and belief, the Accused Products are regularly sold, delivered, and used within the Eastern District of Texas through Amazon and

other online retailers that ship directly to addresses in this District.

13. Venue is proper in this District as to Sony and Sony Semi pursuant to 28 U.S.C. § 1391(c)(3) because foreign defendants may be sued in any judicial district.

## THE PATENTS-IN-SUIT

17. The United States Patent and Trademark Office ("USPTO") duly and legally issued U.S. Patent No. 10,368,125, entitled "Method and System for Efficient Communication," on February 4, 2020. A true and correct copy of the '125 Patent is attached as Exhibit A.

18. Innovation Sciences is the owner of all rights, title, and interest in the '125 Patent.

19. The USPTO duly and legally issued U.S. Patent No. 10,469,898, entitled "Method and System for Efficient Communication," on November 5, 2019. A true and correct copy of the '898 Patent is attached as Exhibit B.

20. Innovation Sciences is the owner of all rights, title, and interest in the '898 Patent.

21. The USPTO duly and legally issued U.S. Patent No. 11,109,094, entitled "Intelligent Wireless System for Communications via a Wireless Local Area Network," on August 31, 2021. A true and correct copy of the '094 Patent is attached as Exhibit C.

22. Innovation Sciences is the owner of all rights, title, and interest in the '094 Patent.

23. The USPTO duly and legally issued U.S. Patent No. 12,634,129, entitled "Edge Device for Multimode Data Communication and Dynamic Prioritization," on May 19, 2026. A true and correct copy of the '129 Patent is attached as Exhibit D.

24. Innovation Sciences is the owner of all rights, title, and interest in the '129 Patent.

25. Defendants have not obtained any license from Innovation Sciences under any of

the Patents-in-Suit.

## ACCUSED PRODUCTS

26. Upon information and belief, Sony and/or Sony Semi has made, used, sold, offered for sale, imported, supported, maintained, marketed, distributed, and operated, directly and through affiliates and subsidiaries, a range of products and related software, firmware, cloud services, and applications that infringe the Patents-in-Suit (the "Accused Products"), including:

(a) Sony Edge AI Camera Systems: the Sony AIH-IVRW2 Edge AI Camera, Rayprus CSV26 Edge AI Camera, and Raspberry Pi AI Camera, each powered by the IMX500 Intelligent Vision Sensor and operating through the AITRIOS Edge AI Platform;

(c) Sony Smartphones, including: Sony Xperia smartphones, including but not limited to the Xperia 1 VII, Xperia 1 VI, Xperia 1 V, Xperia 5 V, Xperia 10 VI, and substantially similar models implementing Wi-Fi, Wi-Fi Calling, Bluetooth, NFC, multimedia buffering, decoder, and notification architectures;

(d) Sony AITRIOS Platform: the AITRIOS Edge AI platform and related cloud services, including the AITRIOS Console for remote device configuration, provisioning, and management;

(e) related software, firmware, cloud services, applications, and successor products.

27. Upon information and belief, Defendants offer and sells AIH-IVRW2 cameras, IMX500-based products, AITRIOS services, and related Edge AI solutions in the United States through direct sales, authorized distributors, commercial integrators, online channels, and partner programs. Sony Semi publicly launched the AITRIOS platform in the United States and actively targets U.S. customers in the smart city, retail analytics, industrial automation, logistics, and

security video markets. Defendants have exhibited AITRIOS at major U.S. industry events, demonstrating its commitment to commercializing the accused Edge AI systems in the United States. Upon information and belief, Defendants' Accused Products are actively marketed, distributed, demonstrated, supported, and sold within the Eastern District of Texas through authorized distributors, commercial integrators, resellers, and end users, including entities participating in Sony Semi's AITRIOS ecosystem and IMX500 commercialization efforts.

## WILLFUL INFRINGEMENT AND SONY'S KNOWLEDGE

28. On or about June 23, 2025, Innovation Sciences sent a detailed notice letter to Sony Corporation of America, Attention: Legal, at 25 Madison Avenue, New York, NY 10010, and 1 Sony Drive, Park Ridge, NJ 07656, via Federal Express and electronic mail. The notice letter, attached as EXHIBIT E, identified U.S. Patent Nos. 10,368,125 and 10,469,898 and provided representative claim charts demonstrating infringement by Sony's products. Sony received the notice package and did not dispute receipt. Sony had actual knowledge of the '125 and '898 Patents and infringement allegations no later than June 23, 2025.

29. The '129 Patent issued on May 19, 2026. Sony continued making, using, importing, offering for sale, selling, supporting, and operating the Accused Products after that date. Based on the specific notice of Innovation Sciences' patent portfolio provided on June 23, 2025, and Sony's knowledge of its own products, Sony knew or should have known of the '129 Patent and the risk that its products infringe.

30. Despite receiving such notice, Sony has continued and continues to make, use, import, offer for sale, sell, support, maintain, distribute, and operate the Accused Products without obtaining a license from Innovation Sciences, and without taking any action to design

around or avoid the Patents-in-Suit.

31. Innovation Sciences reserves the right to seek enhanced damages and other relief to the extent supported by discovery and applicable law.

## GENERAL ALLEGATIONS

### The '125 Patent (U.S. Patent No. 10,368,125)

32. The '125 Patent is directed to an intelligent digital television and a cellular phone with a device identifier for communications through wireless networks.

33. Claim 68 of the '125 Patent is directed to a cellular phone with an interface that receives a wireless communication from a mobile terminal over a different channel than the cellular network, an output interface that relays the communication to the cellular network, and a decoder for decoding compressed signals.

34. Claim 19 of the '125 Patent is directed to an intelligent digital television with a high-definition display, at least one processing unit including a decoder, a network interface configured to communicate through a wireless local area network, a device identifier associated with a network address, and a configuration application to provide configured data comprising information corresponding to the network address and device identifier.

### The '898 Patent (U.S. Patent No. 10,469,898)

35. The '898 Patent is directed to a method for communicating information by an intelligent digital television with a device identifier.

36. Claim 1 of the '898 Patent is directed to a method including providing configured data in initiating communications that are directed to the intelligent digital television, the

configured data comprising information corresponding to a network address and the device identifier; receiving a wireless signal through a network communication channel; converting the wireless signal to accommodate production of a corresponding information content on a high-definition display; and communicating information regarding an updated status.

**The '094 Patent (U.S. Patent No. 11,109,094)**

37. The '094 Patent is directed to intelligent wireless systems for communications via a wireless local area network.

38. Claim 73 of the '094 Patent is directed to an intelligent wireless system comprising a central device with a network interface configured to provide communication through a wireless local area network; wherein the central device is configured to receive an instruction to make a call with a cellular phone and communicate the call via the network interface; wherein the central device is further configured to communicate, via the network interface, an alert based on a short-range wireless communication over a non-IP based wireless connection, with at least one of a sound, a light, or a text triggered to notify the alert; wherein identification information associated with the alert is communicated by the short-range wireless communication; and wherein the system further comprises an interface/buffer and a decoder configured to receive and decompress compressed digital audio/video data via the wireless LAN.

**The '129 Patent (U.S. Patent No. 12,634,129)**

39. The '129 Patent is directed to a multimode data transmit unit (MDTU) implemented in a sensor device, gateway, edge device, or other networked computing device, configured to receive sensor data, process the data, and form data transmit units for

communication over multiple communication modes.

40. Claim 7 of the '129 Patent describes an MDTU comprising a transceiver, memory storing routing tables, and a processor configured by firmware to (a) receive sensor data via wired or wireless communication signals; (b) digitally encode sensor values into sequential digital values and form data transmit units; (c) detect an abnormal condition from sensor data by performing time-based signal analysis; (d) execute communication prioritization in response to the abnormal condition; (e)(i) reconfigure the transceiver or sensors based on the prioritization; and (e)(ii) encrypt or hash message data before transmission of data transmit units.

**INFRINGEMENT ALLEGATIONS**

41. Attached hereto are four exemplary charts demonstrating infringement.

**COUNT I – DIRECT INFRINGEMENT OF THE '125 PATENT**

42. Innovation Sciences realleges and incorporates the paragraphs above as if fully set forth herein.

43. Defendants have directly infringed, and continue to directly infringe, one or more claims of the '125 Patent, including but not limited to Claim 68, by making, using, selling, offering to sell, and/or importing within the United States, without authority or license from Innovation Sciences, the Accused Products that embody the inventions claimed in the '125 Patent, in violation of 35 U.S.C. § 271(a).

Claim 68 Infringement – Sony Xperia Smartphones

44. Claim 68 of the '125 Patent recites:

- "A cellular phone with a device identifier comprising."
- "an interface configured to receive, from a mobile terminal, a wireless communication directed to a cellular communication network, the wireless communication being received through a wireless communication channel that differs from a channel of the cellular communication network."
- "an output interface configured to relay the wireless communication to the cellular communication network, wherein information matching the cellular phone and the mobile terminal is stored in a mapping table."
- "a WiFi communication interface configured for communications through a WiFi network; and a decoder."
- "wherein the device identifier is associated with a network address corresponding to the WiFi network."
- "wherein the cellular phone is configured to connect to Internet via the WiFi network."
- "wherein the cellular phone is further configured to receive a signal through the WiFi network and convert the signal for production of corresponding information content."
- "wherein the signal comprises a compressed signal; and wherein the decoder is configured to decode the compressed signal."

45. As shown in Exhibit F, Sony's Xperia smartphones satisfy these claim limitations. Xperia smartphones are cellular phones with a device identifier (e.g., MAC address, serial number). Sony provides official documentation instructing users on how to find the Wi-Fi MAC address on their Xperia device, confirming the existence of a device identifier associated with the WiFi network. The Xperia provides a personal hotspot feature that can relay a wireless communication from a mobile terminal over Wi-Fi or Bluetooth, which is separate from the cellular network, so that the mobile terminal can communicate with the cellular network via the Sony phone. Xperia smartphones have built-in Wi-Fi connectivity, a decoder, and are configured to connect to the Internet via the WiFi network. The phones receive a compressed signal through the WiFi network and convert the signal for production of corresponding information content, as confirmed by the Xperia's support for video playback formats including H.263, H.264, H.265, MPEG-4 Video, AV1, VP8, VP9, and the decoder is configured to decode the compressed

signal. The Xperia 1 VII, for example, supports Wi-Fi 7 (IEEE 802.11be), Bluetooth 6.0, NFC, and includes a Qualcomm Snapdragon 8 Elite processor with integrated multimedia decoding capabilities.

48. Innovation Sciences has suffered damages as a result of Defendants' direct infringement of the '125 Patent, and will continue to suffer damages unless and until this Court enjoins Defendants.

## COUNT II – INDUCED INFRINGEMENT OF THE '125 PATENT

49. Innovation Sciences realleges and incorporates the paragraphs above as if fully set forth herein.

50. Sony has induced, and continues to induce, infringement of the '125 Patent by actively encouraging others, including customers, resellers, and end-users, to use the Accused Products in a manner that infringes the '125 Patent, in violation of 35 U.S.C. § 271(b).

51. Upon information and belief, Sony's actions include providing instruction manuals, user guides, technical support, setup guides, and marketing materials that direct users to enable and use Wi-Fi connectivity, personal hotspot functionality, multimedia streaming, and related features of the Accused Products in a manner that directly infringes the '125 Patent. Sony also provides customer service and technical support that directs users to operate the Accused Products in an infringing manner.

52. Sony had actual knowledge of the '125 Patent and infringement allegations no later than June 23, 2025, when it received Innovation Sciences' notice letter and representative claim charts. With that knowledge, Sony continued its infringing activities and continued to induce third parties to infringe, demonstrating Sony's specific intent to encourage infringement.

53. Innovation Sciences has suffered damages as a result of Defendants' induced infringement of the '125 Patent.

**COUNT III – DIRECT INFRINGEMENT OF THE '094 PATENT**

64. Innovation Sciences realleges and incorporates the paragraphs above as if fully set forth herein.

65. Defendants have directly infringed, and continue to directly infringe, one or more claims of the '094 Patent, including but not limited to Claim 73, by making, using, selling, offering to sell, and/or importing within the United States, without authority or license from Innovation Sciences, the Accused Products that embody the inventions claimed in the '094 Patent, in violation of 35 U.S.C. § 271(a).

66. Claim 73 of the '094 Patent recites:

- "An intelligent wireless system for communications via a wireless local area network comprising: a central device comprising: a network interface configured to provide a communication through a network communication channel of the wireless local area network;"
- "wherein the central device is configured to receive an instruction to make a call with a cellular phone;"
- "wherein the central device is configured to communicate the call, via the network interface;"
- "wherein the central device is further configured to communicate, via the network interface, an alert based on a short range wireless communication over a non-IP based wireless connection, at least one of a sound, a light, or a text triggered to notify the alert;"
- "wherein identification information associated with the alert is communicated by the short range wireless communication;"
- "wherein the system further comprises an interface/buffer; and a decoder; wherein the interface/buffer is configured to receive a compressed digital signal that comprises at least one of audio data or video data via the wireless local area network; and wherein the decoder is configured to receive the compressed digital signal from the interface/buffer and decompress the compressed digital signal to a

decompressed digital signal for information production."

67. As shown in Exhibit G, Sony's Xperia smartphones satisfy these claim limitations. Xperia smartphones are intelligent wireless systems for communications via a wireless local area network.

The Xperia includes:

- (73a) Network interface: Xperia smartphones include a Wi-Fi network interface (IEEE 802.11 a/b/g/n/ac/ax/be) configured to provide communications through a wireless LAN.
- (73b) Receive call instruction: Xperia smartphones are equipped with cellular transceivers (2G, 3G, 4G LTE, 5G) and telephony applications configured to receive instructions to make calls.
- (73c) Communicate call via network interface: Xperia smartphones support Wi-Fi Calling (VoWiFi), enabling calls to be communicated via the Wi-Fi network interface rather than solely through the cellular radio interface.
- (73d) Alert based on short-range wireless communication: Xperia smartphones include Bluetooth and NFC short-range wireless communication capabilities. These non-IP based wireless connections trigger audible, visual, and text notifications, including notification light alerts and status bar notifications.
- (73e) Identification information associated with alert: Bluetooth pairing procedures communicate identification information including Bluetooth Device Addresses (BD_ADDRs), device names, and profile identifiers. NFC discovery and pairing events similarly communicate device identification information.
- (73f) Interface/buffer and decoder: Xperia smartphones include system memory and buffering mechanisms for received multimedia content, and hardware/software decoders supporting H.263, H.264, H.265/HEVC, MPEG-4, AV1, AAC, FLAC, MP3, and related formats.

68. Innovation Sciences has suffered damages as a result of Defendants' direct infringement of the '094 Patent.

**Count VI – Induced Infringement of the '094 Patent**

69. Innovation Sciences realleges and incorporates the paragraphs above as if fully set forth herein.

70. Sony has induced, and continues to induce, infringement of the '094 Patent by

actively encouraging others, including customers, resellers, and end-users, to use the Accused Products in a manner that infringes the '094 Patent, in violation of 35 U.S.C. § 271(b).

71. Upon information and belief, Sony's actions include providing instruction manuals, user guides, technical support, setup guides, and marketing materials that direct users to enable and use Wi-Fi Calling, Bluetooth pairing, NFC, and multimedia streaming features that collectively implement the claimed system.

72. Sony knew or should have known of the infringement risk presented by the '094 Patent because the '094 Patent shares common inventors, a common specification, overlapping subject matter, and the same accused Xperia platform identified in Innovation Sciences' June 23, 2025 notice letter. Sony nevertheless continued to encourage use of the accused functionality after receiving notice of Innovation Sciences' patent portfolio.

73. Innovation Sciences has suffered damages as a result of Defendants' induced infringement of the '094 Patent.

**COUNT VII – DIRECT INFRINGEMENT OF THE '129 PATENT**

74. Innovation Sciences realleges and incorporates the paragraphs above as if fully set forth herein.

75. Defendants Sony and Sony Semi have directly infringed, and continue to directly infringe, one or more claims of the '129 Patent, including but not limited to Claim 7, by making, using, selling, offering to sell, and/or importing within the United States, without authority or license from Innovation Sciences, the Accused Products that embody the inventions claimed in the '129 Patent, in violation of 35 U.S.C. § 271(a).

76. The Sony AIH-IVRW2 Edge AI Camera, IMX500 Intelligent Vision Sensor, and AITRIOS Edge AI Platform collectively satisfy each limitation of Claim 7 of the '129 Patent either literally and/or under the doctrine of equivalents.

77. Claim 7 of the '129 Patent recites an MDTU comprising:

> - a transceiver comprising at least one antenna, at least one mixer, an ADC, and a DAC, the transceiver comprising mixers, filters, amplifiers, modulators, and demodulators controlled by firmware or software to generate and process radio signals over a plurality of different wired or wireless communication modes, including packet-based wireless protocols;
>
> - a memory storing routing tables and protocol information for forming data transmit units, the memory further storing values representing at least one of: sensor identification, sensor location, network-timing information, and at least one hash function or at least one encryption algorithm;
>
> - a processor configured by firmware and coupled to the transceiver to:
>
> receive sensor data or data transmit units via wired or wireless communication signals processed by the mixers, filters, amplifiers, modulators, and demodulators, and read the received data;
>
> digitally encode sensor values into sequential digital values and form data transmit units according to an encoding rule stored in the memory or received from a network node;
>
> detect an abnormal condition from the sensor data by performing time-based signal analysis comprising computing at least one of a first derivative or a second derivative of the sensor data, or correlating a plurality of sensor values received from multiple sensors, or determining at least one value outside a range of stored sensor values, the range stored in a memory and associated with communication priority;
>
> execute communication prioritization in response to the abnormal condition by dynamically prioritizing communications associated with the abnormal condition; and
>
> reconfigure the transceiver or sensors based on the prioritization by:
>
> - issuing control instructions that modify at least one of transmission frequency, reception frequency, frequency band, sampling rate, data precision, data rate, transmit power, packet size, packet structure, modulation scheme, information coding scheme, receiver sensitivity, or communication interval; and
>
> - encrypting or hashing message data using the stored hash function or encryption algorithm before transmission of the data transmit units.

78. As shown in Exhibit H, Sony's AIH-IVRW2, IMX500, and AITRIOS platform infringe Claim 7 as follows:

- (Preamble / Edge Device): The AIH-IVRW2 is an "edge device" that forms part of the AITRIOS ecosystem. Sony's official AITRIOS system overview identifies the Sony AIH-IVRW2, Rayprus CSV26, and Raspberry Pi AI Camera as "Edge AI Devices" that form the "distributed intelligence network of the AITRIOS's ecosystem."
- (Transceiver): The AIH-IVRW2 contains an ESP32-WROVER-E module with an integrated IEEE 802.11 b/g/n (2.4 GHz) Wi-Fi transceiver comprising a PCB trace antenna, RF down-converter (mixer), ADC, DAC, filters, amplifiers, modulators (DSSS/OFDM), and demodulators.
- (Memory): The AIH-IVRW2 includes 16MB ROM and 8MB RAM (ESP32-WROVER-E) storing firmware, Wi-Fi configuration data (SSID, encryption keys), routing tables, device identifiers (AITRIOS ID), network-timing information (NTP), and WPA2/WPA3 encryption algorithms.
- (Processor): e.g. The AIH-IVRW2's ESP32 runs FreeRTOS-based firmware; the IMX500's on-chip DSP runs firmware-configured AI inference logic. The AITRIOS Console remotely deploys AI models and configuration parameters via firmware updates.
- (3a) Receive sensor data: e.g. The IMX500 CMOS sensor captures image data and transfers it to the onboard DSP for AI processing; the ESP32 receives cloud-issued data transmit units via Wi-Fi through the transceiver.
- (3b) Encode & form data transmit units: e.g. The IMX500 digitizes optical signals to sequential digital pixel values; e.g. the DSP encodes AI inference results (metadata tensors) per AITRIOS protocol; the ESP32 packetizes AI results into data transmit units (header + payload).
- (3c) Detect abnormal condition: e.g. On-camera AI inference using Brain Builder—trained classifier, detector, and anomaly detection models detects conditions outside normal operational parameters—satisfying element (c)(iii) (values outside stored range associated with communication priority). Configurable detection thresholds stored in memory define normal ranges; deviations trigger abnormal condition detection.
- (3d) Communication prioritization: e.g. The AITRIOS architecture selectively generates and transmits inference metadata associated with detected events while suppressing transmission of idle/non-event image frames—dynamically prioritizing communications associated with the abnormal condition. The AITRIOS Console provides configurable reporting intervals and event-driven transmission triggers.
- (3e)(i) Reconfiguration: e.g. The AITRIOS Console issues control instructions that modify device parameters including image quality (data precision), periodic operation intervals (communication interval), and AI model/firmware configurations (sampling rate, data rate)—satisfying the reconfiguration element.
- (3e)(ii) Encryption: e.g. The AIH-IVRW2 employs WPA2-CCMP (AES-128) and WPA3-Personal encryption at the wireless layer and TLS-protected communications at the transport layer, encrypting message data before transmission of data transmit units.

79. Innovation Sciences has suffered damages as a result of Defendants' direct infringement of the '129 Patent.

**COUNT VIII – INDUCED INFRINGEMENT OF THE '129 PATENT**

80. Innovation Sciences realleges and incorporates the paragraphs above as if fully set forth herein.

81. Defendants have induced, and continue to induce, infringement of the '129 Patent by actively encouraging others, including customers, resellers, commercial integrators, AITRIOS ecosystem partners, and third-party developers, to deploy, configure, and use the Accused Products in a manner that infringes the '129 Patent, in violation of 35 U.S.C. § 271(b).

82. Upon information and belief, Sony's actions include publishing and distributing the AITRIOS developer portal, AITRIOS Console documentation, AIH-IVRW2 setup guides, IMX500 datasheets, and Raspberry Pi AI Camera integration guides that instruct users to configure and operate the accused systems in a manner that directly infringes Claim 7 of the '129 Patent. Sony also hosts developer events and provides SDK tools that affirmatively promote the infringing use of the accused edge AI systems.

83. The '129 Patent issued on May 19, 2026. Sony continued its induced infringement after that date with knowledge of Innovation Sciences' patent portfolio from the prior June 23, 2025 notice.

84. Innovation Sciences has suffered damages as a result of Sony's induced infringement of the '129 Patent.

**PRAYER FOR RELIEF**

WHEREFORE, Innovation Sciences requests judgment in its favor and against Defendants, and respectfully requests the following relief:

A. A judgment that Defendants have directly infringed and/or induced infringement of one or more claims of each of the '125 Patent, the '898 Patent, the '094 Patent, and the '129 Patent;

B. A judgment that Defendants' infringement of the Patents-in-Suit has been and continues to be willful and deliberate;

C. An award of damages adequate to compensate Innovation Sciences for all of Defendants' infringement, but in no event less than a reasonable royalty under 35 U.S.C. § 284, together with pre-judgment and post-judgment interest at the maximum rate permitted by law, and compounded as appropriate;

D. An award of costs;

E. An award of enhanced damages under 35 U.S.C. § 284 based on Defendants' willful infringement;

F. An order granting a permanent injunction pursuant to 35 U.S.C. § 283 restraining and enjoining Defendants and their officers, agents, servants, employees, and those acting in concert with them from further infringement of the Patents-in-Suit, or in the alternative, an ongoing royalty for any continued infringement after judgment;

G. An order for post-verdict accounting and an award of supplemental damages for any continuing infringement through the date of final judgment;

H. A declaration that this is an exceptional case and an award of attorneys' fees under 35 U.S.C. § 285;

I. Any further legal or equitable relief deemed appropriate.

**JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Innovation Sciences demands a trial by jury on all issues so triable.

Dated: July 2, 2026

Respectfully submitted,

/s/ Joseph J. Zito

Joseph J. Zito
jzito@dnlzito.com
(202) 466-3500
DNL ZITO
1250 Connecticut Avenue, NW
Suite 700
Washington, DC 20036

Benjamin C. Deming
Admitted Pro Hac Vice
bdeming@dnlzito.com
DNL ZITO
3232 McKinney Ave. #500
Dallas, TX 75204
214-799-1145

*Attorneys for Plaintiff*
*Innovation Sciences, LLC*